# United States District Court
# Central District of California

| | |
|---|---|
| ALEX SLOAN, individually, and on behalf of other members of the general public similarly situated, | Case № 2:16-cv-05341-ODW (SK) |
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS [44]** |
| v. | |
| 1st AMERICAN AUTOMOTIVE SALES TRAINING; TOM ROSS; KIRBY KOOPMAN; and DOES 1–50, inclusive, | |
| Defendants. | |

## I. INTRODUCTION

This is a putative consumer class action. Before the Court is Defendants 1st American Automotive Sales Training ("1st Auto"), Tom Ross, and Kirby Koopman's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 44.) For the following reasons, the Court **DENIES** Defendants' motion.

## II. FACTUAL BACKGROUND

Defendants advertised a three-day automotive sales training course online. (First Am. Compl. ("FAC") ¶ 6, ECF No. 42.) An advertisement on 1st Auto's

website described the sales training course as a combination "of fundamentals, role playing, tests, and homework" and suggested that the trainer "will place" trainees with dealerships and that trainees will be "working within the first few days." (*Id.* ¶¶ 6–7.) A separate advertisement on Craigslist.com indicated that 1st Auto offers "[c]omprehensive training with national certification[,] $2000/month or very liberal commissions[,] general incentives and bonuses[,] a 5 day work week[,] employee medical and dental benefits[, and a] friendly work environment." (*Id.* ¶ 5.)

Plaintiff alleges that the reality for those who responded to the advertisements was quite different. Respondents were charged $695 for the course, did not receive national certification, and were not offered employment at the course's conclusion despite further promises during the training of "guaranteed" positions. (*Id.* ¶¶ 9–11.)

Plaintiff alleges that he went to a Volvo dealership in Culver City, California, on Wednesday, May 27, 2015, to "begin his training after responding to the Craigslist advertisement describing the job opening." (*Id.* ¶ 28.) After arriving at the dealership, Plaintiff paid $695 for the course and was told that he would be reimbursed within ninety days. (*Id.* ¶¶ 29, 37.) Plaintiff was promised national certification and a position "multiple times" during the training. (*Id.* ¶ 30.) At some point, Plaintiff signed paperwork and was told that he would need to complete a background check before beginning work on "Monday of the following week." (*Id.* ¶ 31.) Ultimately, Plaintiff did not receive national certification, a position, or reimbursement for the course—in short, he was provided with "nothing of benefit." (*Id.* ¶ 37.) Plaintiff complained to the General Sales Manager of the Volvo dealership but the Sales Manager told Plaintiff "there was nothing he could do because Defendant Tom Ross was in charge of hiring." (*Id.* ¶ 32.)

Plaintiff filed this putative class action in federal court on July 19, 2016, pursuant to the Class Action Fairness Act ("CAFA").[1] (ECF No. 1.) In his Class

---

[1] Plaintiff's proposed class definition is: "All California [c]itizens who, between the applicable statute of limitations and the present, [] attended and paid for the class/training, only not to be given the employment position that was guaranteed to them." (FAC ¶ 39.)

Action Complaint, Plaintiff alleged two causes of action against Defendants: (1) violation of the False Advertising Law ("FAL") pursuant to California Business and Professions Code section 17500; and (2) violation of the Unfair Competition Law ("UCL") pursuant to California Business and Professions Code section 17200. (*Id.*) On February 27, 2017, Plaintiff filed a First Amended Complaint adding a cause of action for violation of the Consumer Legal Remedies Act ("CRLA") pursuant to California Civil Code section 1750. (FAC ¶¶ 81–83.) On March 17, 2017, Defendants filed the pending motion to dismiss pursuant to Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 44.) The motion is now fully briefed and ready for decision. (ECF Nos. 45–46.)[2]

### III. ANALYSIS

### A. Dismissal Pursuant to Rule 12(b)(1)

Defendants contend that Plaintiff has not established the requisite amount in controversy for CAFA jurisdiction. (Mot. 1–2, ECF No. 44.) "Under CAFA, federal courts have original jurisdiction over a class action if (1) the parties are minimally diverse, (2) the proposed class has more than 100 members, and (3) the aggregate amount in controversy exceeds $5 million." *See Lockhart v. Columbia Sportswear Co.*, No. 515CV02634ODWPLAX, 2016 WL 2743481, at *2 (C.D. Cal. May 11, 2016) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)). "[T]he claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

Courts have applied the facial attack/factual attack framework in Rule 12(b)(1) challenges to CAFA's $5 million amount in controversy requirement. *See, e.g.*, *Zapata Fonseca v. Vigo Importing Co.*, No. 5:16-CV-02055-EJD, 2016 WL 6249006, at *1 (N.D. Cal. Oct. 26, 2016). A facial attack examines whether allegations

---

[2] After considering the papers filed in connection with this motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

contained in the complaint are sufficient to establish the amount in controversy. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) ("In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.").

The proponent of federal jurisdiction, in this case, Plaintiff, bears the initial burden of establishing federal jurisdiction including that the amount in controversy exceeds $5 million. *In re Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013). However, the plaintiff may satisfy this burden by merely alleging in good faith that its damages exceed the relevant jurisdictional threshold. *See Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015).

Once the plaintiff satisfies its burden, the defendant must show to a legal certainty that the claims do not satisfy the amount in controversy requirement. *See Richardson v. Servicemaster Global Holdings, Inc.*, No. 09–CV–4044 SI, 2009 WL 4981149, at *3 (N.D. Cal. Dec. 15, 2009) ("In other words, when a plaintiff brings suit in federal court alleging that the amount in controversy exceeds the jurisdictional minimum, a defendant challenging the federal court's jurisdiction must establish to a legal certainty that plaintiff's claim does not satisfy the requisite jurisdictional amount."); *Taylor v. Enter. Rent-A-Car Co.*, No. CV 10-1849-JST SHX, 2011 WL 1195898, at *3 (C.D. Cal. Mar. 30, 2011) ("Defendants must show that from . . . the face of the pleadings . . . it is apparent to a legal certainty that Plaintiff cannot recover $5,000,000."); *Twitter, Inc. v. Skootle Corp.*, No. C 12-1721 SI, 2012 WL 2375486, at *3 (N.D. Cal. June 22, 2012).

In a factual attack, the defendant challenges the facts alleged in the complaint with evidence. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction by offering affidavits or other evidence to dispute the allegations in the complaint."). To initiate a factual attack, the defendant must present "affidavits or other evidence" relevant to the amount in

controversy. *Id.* The presentation of such evidence shifts the burden back to the plaintiff, who must then produce evidence to support the allegations contained in its complaint. *Id.* (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

Here, the only possible attack is a facial one because Defendants have not attached any evidence to their motion to dismiss. *Id.* Although Defendants seek to undermine the "facts" alleged in Plaintiff's Complaint by arguing that 1st Auto is a "small business," and as such, could not have possibly trained the "thousands" of class members alleged in Plaintiff's Complaint, they have not submitted any evidence showing that they lacked the capacity to train, or did not train, that number of class members. (FAC ¶ 43; Mot. 2.) Arguments of counsel in a motion are not evidence and therefore cannot serve as the trigger for a factual attack. *See Singh v. I.N.S.*, 213 F.3d 1050, 1054 n.8 (9th Cir. 2000). Accordingly, the Court considers only whether Plaintiff's Complaint is subject to a facial attack.

The Court first examines whether Plaintiff has alleged in good faith that the amount in controversy exceeds $5 million. Plaintiff alleges that the aggregate total of the class members' claims is "in excess of $5,000,000 . . . exclusive of interests and costs." (FAC ¶ 20.) This amount in controversy is made up of some combination of actual damages, putative damages, and attorneys' fees. (*See* Prayer for Relief, ECF No. 42); *see also Bayol v. Zipcar, Inc.*, No. 14-CV-02483-TEH, 2015 WL 4931756, at *7 (N.D. Cal. Aug. 18, 2015) ("The amount in controversy can include compensatory damages, punitive damages, attorneys' fees, and the value of injunctive relief"); *Zapata Fonseca*, 2016 WL 6249006, at *2 ("Punitive damages and attorneys' fees may be considered part of the amount in controversy in a civil action."); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action.") (citing *Preferred Life Assur. Society*, 320 U.S. 238, 240 (1943)).

As Defendants point out, 7,195 respondents would need to have taken the $695

1  course to exceed the $5 million threshold. (Mot. 1.) This number is consistent with

2  Plaintiff's allegation that the "proposed class is composed of thousands of persons."[3]

3  (FAC ¶ 43.) However, the 7,195 figure can be cut in half once punitive damages are

4  factored into the equation.[4] *See Bayol*, 2015 WL 4931756, at *9 (using

5  "conservative" 1:1 ratio in calculating punitive damages for CAFA amount in

6  controversy). That figure could be even further reduced by factoring in attorneys'

7  fees.[5] *Id.* (indicating that attorneys' fees should be calculated for the CAFA amount in

8  controversy at "25% percent of class award's common fund"). Ultimately, the Court

9  finds that the prospect of thousands of class members is not so unbelievable as to fall

10  outside the bounds of good faith.

11  Having found that Plaintiff alleged the requisite amount in controversy in good

12  faith, the Court turns to whether Defendants have shown to a legal certainty that

13  Plaintiff cannot meet the amount in controversy requirement. *Richardson*, 2009 WL

14  4981149, at *3. Defendants' sole "legal" argument is that the three-year statute of

15

16  [3] Defendants' argument that Plaintiff's First Amended Complaint puts the class size "closer to 100 members" is misleading. (Mot. 1.) While the jurisdictional section of Plaintiff's First Amended

17  Complaint indicates that the class is made up of "at least" 100 members, this statement is clearly not meant to be a representation of the class' actual size; this statement is merely an indication that the

18  class meets the jurisdictional requirement. (*See* FAC ¶ 20.)

19  [4] Punitive damages are potentially available here because Plaintiff has alleged that Defendants acted with malice. (*See* FAC ¶¶ 58 ("Defendants knew that that their representations and omissions were

20  untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members."), 63); *see also*

21  *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 592–93 (C.D. Cal. 2011) ("[I]n order for Plaintiff to receive punitive damages under the CLRA, Plaintiff must establish that Defendant was 'guilty of

22  oppression, fraud, or malice . . .'") (quoting Cal. Civ. Code § 3294); *Price v. Kawasaki Motors*

23  *Corp.*, USA, No. SACV 10-01074-JVS, 2011 WL 10948588, at *7 (C.D. Cal. Jan. 24, 2011) ("[The plaintiff] also seeks punitive damages under Civil Code section 1780(a)(4), which authorizes

24  recovery of punitive damages when a person suffers damage as a result of unlawful acts under the CLRA. A plaintiff bringing an action in federal court may include a short and plain prayer for

25  punitive damages that relies entirely on unsupported and conclusory averments of malice or

26  fraudulent intent.") (internal citations and quotation marks omitted).

27  [5] Attorneys' fees may be included "if they are permitted by law." *Bayol*, 2015 WL 4931756, at *9. They are permitted under at least one of the laws at issue here. *Gonzales v. CarMax Auto*

28  *Superstores, LLC*, 845 F.3d 916, 918 (9th Cir. 2017) ("Under the CLRA, '[t]he court shall award . . . attorney's fees to a prevailing plaintiff in litigation.'") (quoting Cal. Civ. Code § 1780(e)).

limitations period relevant to the claims alleged precludes a class numbering in the thousands.[6] (Mot. 2.) To begin, this is more of a factual argument than a legal one. Furthermore, this argument merely makes Plaintiff's proposed class size less likely; it does not prove to a legal certainty that the value of Plaintiff's claims is $5 million or less. Accordingly, the Court **DENIES** Defendant's motion to dismiss pursuant to Rule 12(b)(1).

**B. Dismissal Pursuant to Rule 12(b)(6)**

Defendants also move to dismiss based on Plaintiff's failure to state a claim. Defendants' primary argument is that the class lacks the requisite predominance under Rule 23(b)(3). (Mot. 2–3.) In his Opposition, Plaintiff argues that Defendants' motion is premature because the class definition may be amended before certification and because the parties have yet to undertake discovery. (Opp'n 10–12, ECF No. 45.) The Court ultimately sides with Plaintiff.

The Ninth Circuit held in *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir. 2009) that a defendant may move to dismiss a class action complaint or strike class allegations before the plaintiff affirmatively seeks certification. However, such a motion is rarely appropriate "before discovery commences." *Leon v. Standard Ins. Co.*, No. 215CV07419ODWJC, 2016 WL 768908, at \*3 (C.D. Cal. Jan. 28, 2016) (cumulating cases); *see also Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2011 WL 6748514, at \*7 (N.D. Cal. Dec. 22, 2011) (denying motion to dismiss class action complaint and motion to strike class action allegations where "discovery ha[d] not yet commenced, and no motion for class certification ha[d] been filed"); *Connelly v. Hilton Grant Vacations Co.*, LLC, No. 12CV599 JLS KSC, 2012 WL 2129364, at \*3 (S.D. Cal. June 11, 2012) ("To the extent that [the defendant] seeks to resolve class claims at the pleading stage, . . . its motion is improperly brought pursuant to Federal Rule of Civil Procedure 12(b)(6).")

---

[6] Claims under the CRLA and the FAL are subject to a three-year statute of limitations, while claims under the UCL are subject to a four-year statute of limitations. *See* Cal. Civ. Code §§ 338, 1783; Cal. Bus. & Prof. Code § 17208.

(internal quotation marks and citations omitted). The parties have yet to commence discovery in this case. (Opp'n 11.) As such, Defendants must make a compelling argument for dismissal.

Defendants make no such argument. First, Defendants argue that the class does not possess the requisite predominance because some of its members may have suffered less damages than others. (Mot. 2.) For instance, Defendant surmises that some members might have received a refund for the cost of the course or have later obtained a job where the training they received during the course was of "value." (*Id.*) To begin, Defendants allude to factual scenarios that have no basis in the allegations or in evidence now before the Court—there is nothing to suggest that anyone in the prospective class received a refund or later obtained a job where the training had value. Furthermore, the Ninth Circuit has explicitly held that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Schramm v. JPMorgan Chase Bank, N.A.*, No. LA CV09-09442 JAK, 2013 WL 7869379, at \*5 (C.D. Cal. Dec. 13, 2013) (citing *Yokohama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). Indeed, Defendants' position would preclude almost all consumer class actions, and is therefore untenable. *In re IKO Roofing Shingle Prod. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014) (finding that Rule 23(b)(3) class actions should not be dismissed for lack of predominance based on differential damages because doing so would make most consumer class actions "impossible").

Defendants' second argument is largely incoherent. (Mot. 3.) As the Court understands it, Defendants believe that this action should be dismissed because an inquiry would have to be made into whether each class member received a binding offer of employment and which advertisement they saw. It is unclear why such an inquiry would be necessary, as Plaintiff specifically alleged that all class members' claims "arise from the identical, false, affirmative written advertisements guaranteeing

///

a job which class members responded to when attending and paying for training . . ."
(FAC ¶ 45.)

In sum, the Court finds that the more prudent approach is to allow discovery and handle any remaining questions about the propriety of Plaintiff's proposed class definition upon a motion for class certification. Accordingly, the Court **DENIES** Defendant motion to dismiss pursuant to Rule 12(b)(6).

## IV. CONCLUSION

In light of the foregoing, the Court **DENIES** Plaintiff's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 44.)

**IT IS SO ORDERED.**

April 17, 2017

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**